UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

URSULA SCOTT,

    Plaintiff,

    v.

BLUE MANTIS, INC.,

    Defendant

Civil Action No.

**COMPLAINT
AND DEMAND FOR JURY TRIAL
INJUNCTIVE RELIEF SOUGHT**

Plaintiff Ursula Scott by and through undersigned counsel complains against the defendant as follows:

## Introduction

1. Defendant discriminated against plaintiff Scott because of her race in employment and terminating her employment, thereby violating her rights under the Civil Rights Act of 1866 as amended, 42 U.S.C. § 1981, ("§ 1981"), and the Maine Human Rights Act ("MHRA"), 5 M.R.S.A. § 4551 *et seq*.

## Parties

2. Ursula Yvette Scott, PhD, is a resident of Daytona Beach, in Volusia County, Florida.

3. Defendant Blue Mantis, Inc., (hereafter "defendant" or "Blue Mantis"), is a corporation organized under the laws of the State of Delaware, registered with the Maine Secretary of State and authorized to transact business in the State of Maine since March 15, 1996,

4. Prior to May 22, 2024, Blue Mantis, Inc. was registered with the Maine Secretary of State under the corporate name GreenPages, Inc., (hereafter "GreenPages").

1

5. GreenPages had a principal place of business and home address at 33 Badgers Island West, Kittery, Maine between May 27, 2021 and May 13, 2024, as it reported in filings with the Maine Secretary of State.

6. On May 14, 2024, in a filing with the Maine Secretary of State, GreenPages changed its principal office to an address in Portsmouth, New Hampshire.

7. On May 22, 2024, GreenPages filed an Amended Application with the Maine Secretary of State to transact business in the State of Maine under the new name, Blue Mantis, Inc.

8. Dr. Scott was employed by GreenPages, Inc. from September 26, 2022 to November 3, 2022, at which time GreenPages' principal address was in Kittery, Maine.

9. As of on or about May 22, 2024, defendant Blue Mantis assumed and thereafter continued the operations and workforce of GreenPages, Inc.

10. As of July 17, 2023, defendant Blue Mantis had actual or constructive notice of Dr. Scott's claims of discrimination against GreenPages, Inc.

11. Defendant Blue Mantis has assumed the legal identity of GreenPages, assumed its liabilities and assumed its ability to provide relief directly to Dr. Scott.

## Jurisdiction

12. This Court has original subject matter jurisdiction over Dr. Scott's federal claims pursuant to 28 U.S.C. § 1331.

13. This Court has supplemental jurisdiction over Dr. Scott's state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that that they form part of the same case or controversy.

14. On May 9, 2023, Dr. Scott filed a Charge of Discrimination with the Maine Human Rights Commission (MHRC).

15. On September 23, 2024, the MHRC found reasonable grounds to believe GreenPages discriminated against Dr. Scott on the basis of race in violation of the Maine Human Rights Act.

16. On December 31, 2024, the MHRC issued Dr. Scott notice of right to sue on her claims under the MHRA.

17. Dr. Scott has exhausted all administrative remedies for her claims under the MHRA.

### Jury Trial Demand

18. Pursuant to Federal Rule of Civil Procedure 38(b), Dr. Scott hereby demands a trial by jury on all issues triable of right by jury.

### Factual Allegations

19. Dr. Scott is African American and Black.

20. Dr. Scott has a Doctorate in Leadership for Higher Education, and substantial experience, working in education for more than 20 years and in business more than 10 years, for which she has received awards and recognition.

21. Dr. Scott was employed by GreenPages as a Talent Acquisition and Development Partner in its cloud technology business, then based in Kittery, Maine, from on or about September 26, 2022 to November 3, 2022.

22. During Dr. Scott's employment by GreenPages, she was the sole Black and African American member of upper management, comprised of 5 white chief officers, 5 white vice presidents, herself as the sole "partner" and several white hiring managers.

23. A recruiting agency for GreenPages contacted Dr. Scott about GreenPages' opening of a remote position of Talent Acquisition and Development Partner in August 2022.

24. After five rounds of interviews with GreenPages management, on September 16, 2022, GreenPages' CEO Ron Dupler offered Dr. Scott employment for a remote position of Talent Acquisition & Development Partner, with broad ranging responsibilities including developing a framework for attracting and retaining employees.

25. At the beginning of her employment, on or about September 28, 2022, GreenPages' COO and CFO Steven Torres told Dr. Scott that he wanted her to focus on developing a framework for training and retention of staff and developing pipelines for recruitment, and to work with consultants who were handling recruitment.

26. In September and early October 2024, Dr. Scott began working with GreenPages' officers, department heads and hiring managers to gather information and identify resources.

27. Dr. Scott performed her job duties satisfactorily, and received positive feedback from GreenPages' executives, managers and coworkers during her employment.

28. On or about October 17, 2022, GreenPages hired Rachel Comella, who is white, as its Vice President of People and Culture, (i.e. Human Resources).

29. Ms. Comella initially stated she would work with Dr. Scott as a team in People and Culture.

30. However, from the outset of her employment, Ms. Comella singled Dr. Scott out for hostile, undermining and demeaning discriminatory treatment.

31. Throughout Dr. Scott's employment, Ms. Comella made multiple statements reflecting her bias against Dr. Scott's race, color and background, as well as her hostility to diversity.

32. Ms. Comella engaged in discriminatory hostile treatment of Dr. Scott including, but not limited

to making Dr. Scott and her work the focus of questioning in meetings, repeatedly calling unscheduled meetings, attempting to undermine Dr. Scott by questioning her about what she was working on, demanding to see her notes of interviews of managers, criticizing her work, demanding to know why she had spoken with certain people, giving Dr. Scott assignments that had been delegated to others, (such as recruiting), and changing her job duties.

33. On Wednesday, October 26, 2022, Ms. Comella informed Dr. Scott that she had become Dr. Scott's supervisor.

34. Ms. Comella was Dr. Scott's supervisor for a total of 7 workdays between October 26 and November 3, 2022.

35. In one or more meetings where Dr. Scott was not present, Dr. Scott later learned that Ms. Comella had made false and disparaging comments about Dr. Scott to other members of the team.

36. Thereafter, Ms. Comella contacted Dr. Scott, stated she wanted to "start over" and began asking variously insulting and intrusive personal questions, including "what do you do when you're not bailing water?" and what her children's names were, which had no bearing on any work matters.

37. Ms. Comella subjected Dr. Scott to racist demeaning comments about her personal appearance and hairstyle when she began a team meeting by asking Dr. Scott what happened to her braids, to which Dr. Scott responded, "They are gone." Ms. Comella pressed on, asking again where did she put her braids. Dr. Scott was shocked and embarrassed by the intrusive questioning about her personal appearance, so she remained silent. Ms. Comella then commented that she liked Dr. Scott's new look, and that it was "1920s."

38. In a team meeting, Ms. Comella interrogated Dr. Scott about her proposed process and

framework for recruiting, and asked "how is it done where you come from?" to which Dr. Scott objected asking "What do you mean, 'where I come from?'" After badgering Dr. Scott at length and ignoring her responses, Ms. Comella announced to the team that a different framework created by a consultant would be used instead of Dr. Scott's.

39. On October 31, 2022, Ms. Comella proceeded to instruct Dr. Scott to scrap her proposed framework for a recruiting process for hiring managers, and to make a chart with the terms Comella identified.

40. Dr. Scott believed that Ms. Comella was discriminating against her based on her race, and contacted her contact at the recruitment agency to complain on October 31, 2022.

41. On November 1, 2022, Dr. Scott informed staff at the recruiting agency that she believed Ms. Comella was discriminating against her.

42. Ms. Comella made comments in meetings Dr. Scott to the effect that "when we hire people, they need to fit our culture," even though GreenPages had no stated definition of what it's "culture" was.

43. During Dr. Scott's employment, GreenPages had no written policy on Diversity, Equity, Inclusion and Belonging ("DEIB"), which Dr. Scott proposed to change as part of her job duties to retain and develop employees.

44. On or about November 2, 2022, in a meeting with a consultant about areas of priority for GreenPages' People and Culture, Dr. Scott proposed "DEIB and succession." Ms. Comella cut her off and pronounced "DEIB and succession are not priorities, I would say recruitment," even though recruitment was not one of the topics on the list for prioritization.

45. On November 3, 2022, Ms. Comella called Dr. Scott to an unscheduled meeting where she

informed Dr. Scott that her employment was terminated, saying "we decided to go in a different direction, not talent acquisition. We are terminating your position."

46. In its response of July 31, 2023 to the Maine Human Rights Commission, defendant Blue Mantis repeated the claim that GreenPages eliminated Dr. Scott's position.

47. Defendant's claim that GreenPages eliminated Dr. Scott's position is false and pretextual.

48. Defendant had a continuing need for the services Dr. Scott had been performing.

49. In its response to the MHRC, defendant made the false and pretextual claim that Ms. Comella decided to terminate Dr. Scott's employment because Dr. Scott lacked the knowledge and skills to perform her job, and that Ms. Comella had both, and decided to take over all Dr. Scott's job duties herself, with COO Steven Torres approval.

50. GreenPages' Progressive Discipline Policy as of the time of Dr. Scott's employment stated that if there were concerns about an employee's job performance that could impact ongoing employment, the initial action to be taken was spoken counseling with written summary, followed thereafter by progressive disciplinary action if needed.

51. In deviation from its own policies, GreenPages did not provide any counseling or other warning to Dr. Scott about any claimed deficiencies in her job performance before terminating her employment.

52. In its response to the MHRC, defendant stated that that Ms. Comella, who is white, assumed Dr. Scott's responsibilities of recruitment and development of technical employees for its business, which claim is false pretext because defendant hired employees in addition to Ms. Comella to carry out Dr. Scott's duties.

53. In truth, defendant sought new employees to fill Dr. Scott's position in the months following

defendant's claimed elimination of her position.

54. In its response to the MHRC, defendant denied that it replaced Dr. Scott with a white male, which denial is false and pretextual.

55. Among other employees, from about January 2023 to about April 2023, defendant employed Ryan Eastman, who is a white male, to perform Dr. Scott's job duties under the job title Senior Technical Recruiter.

56. Defendant is responsible for the racially discriminatory acts of GreenPages' officers, managers supervisory employees and agents under 42 U.S.C. § 1981, and the MHRA.

57. GreenPages discriminated against Dr. Scott on the basis of her race and color by subjecting her to disparate treatment and discharging her from employment.

58. GreenPages failed to take adequate actions to ensure its management did not engage in discriminatory treatment of Dr. Scott because of her race and color.

59. GreenPages manager, Ms. Comella, acting on bias, unthinking stereotypes or discriminatory intent proximately caused higher level decisionmakers for GreenPages to treat Dr. Scott unequally in matters of employment, thereby discriminating against Dr. Scott based on race and color.

60. GreenPages higher level managers decided to treat Dr. Scott unequally in employment, based on information that they knew, or reasonably should have known with adequate investigation, was race-based discrimination.

61. GreenPages' discriminatory treatment and termination of employment denied Dr. Scott equal rights in employment with white employees and adversely affected her status as an employee because of her race and color.

62. As a consequence of GreenPages' discriminatory actions, Dr. Scott suffered damages, including emotional pain and suffering, embarrassment, humiliation, loss of enjoyment of life, harm to reputation, inconvenience and economic loss.

63. Dr. Scott seeks injunctive relief to make her whole where no adequate remedy exists at law.

**Count I - The Civil Rights Act of 1866 As Amended, 42 U.S.C. § 1981**

64. Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs as if set forth fully herein.

65. The Civil Rights Act of 1866, 42 U.S.C. § 1981, ("§ 1981"), established that "[a]ll persons ... shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens."

66. Dr. Scott's employment with GreenPages was a contract subject to § 1981.

67. GreenPages violated 42 U.S.C. § 1981 by denying Dr. Scott equal rights in making and enforcing contracts by discharging her from employment.

68. GreenPages terminated Dr. Scott's employment because of, meaning based in part on, her race and color.

69. Defendant is liable under § 1981 for the decisions of GreenPages' officers and managers.

70. Defendant by GreenPages violated § 1981 by denying Dr. Scott equal rights with white employees whether it consciously intended to treat her unequally , or if it acted based on unthinking stereotypes or bias.

71. GreenPages denied Dr. Scott equal rights with white employees in discharging her from employment on false and pretextual claimed grounds.

72. GreenPages' termination of Dr. Scott's employment was adverse action that caused Dr. Scott tangible and intangible damage.

73. Defendant by GreenPages intentionally violated 42 U.S.C. § 1981 with malice and/or with reckless disregard for Dr. Scott's rights.

74. As a direct and proximate result of GreenPages' violations of 42 U.S.C. § 1981, Dr. Scott suffered damages.

### Count II - Maine Human Rights Act (MHRA), 5 M.R.S.A. § 4551 *et seq.*

75. Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs as if set forth fully herein.

76. The Maine Human Rights Act, ("MHRA"), 5 M.R.S.A. § 4572(1)(A), provides, in relevant part, "it is unlawful employment discrimination"… for an employer "to discharge an employee or discriminate with respect to hire, tenure, promotion, transfer, compensation, terms, conditions or privileges of employment or any other matter directly or indirectly related to employment" because of race or color.

77. The MHRA provides that for employment discrimination, "race," … "includes traits associated with race, including hair texture, Afro hairstyles and protective hairstyles." 5 M.R.S. § 4553 (8-H) . "Protective hairstyle" includes braids, twists and locks. 5 M.R.S. § 4553 (8-G).

78. GreenPages was an employer with a principal place of business in Kittery, Maine, and was subject to the MHRA as of September, October and November 2022.

79. Dr. Scott was an employee of GreenPages within the meaning of the MHRA.

80. GreenPages discriminated against Dr. Scott with respect to the tenure, terms, conditions and privileges of employment in subjecting her to unequal treatment with white employees

10

because of her race and color.

81. GreenPages discriminated against Dr. Scott by discharging her from employment because of her race and color.

82. Defendant is liable under the MHRA for the decisions of GreenPages' managers and officers.

83. Defendant by GreenPages violated the MHRA by denying Dr. Scott equal rights with white employees whether it consciously intended to treat her unequally , or if it acted based on unthinking stereotypes or bias.

84. GreenPages denied Dr. Scott equal rights with white employees in discharging her from employment on false and pretextual claimed grounds.

85. GreenPages' termination of Dr. Scott's employment was adverse action that caused Dr. Scott tangible and intangible damage.

86. Defendant by GreenPages intentionally violated the MHRA with malice and/or with reckless disregard for Dr. Scott's rights.

87. As a direct and proximate result of GreenPages' violations of the MHRA, Dr. Scott suffered damages.

**Prayer for Relief**

Plaintiff Scott respectfully requests that the Court grant the following relief:

A.  Enter Judgment in plaintiff's favor;

B.  Declare the conduct engaged in by defendant to be in violation of plaintiff's rights under 42 U.S.C. § 1981 and the MHRA;

C.  Enjoin defendant, its agents, employees, and those acting in concert with them from continuing to violate plaintiff's rights;

D.  Order that defendant reinstate plaintiff to employment;

E.  Award equitable relief for back pay and benefits;

F.  Award compensatory damages under 42 U.S.C. § 1981 and the MHRA in an amount to be determined at trial;

G.  Award punitive damages under 42 U.S.C. § 1981 and the MHRA in an amount to be determined at trial;

H.  Award nominal damages;

I.  Award attorney's fees, including legal expenses, and costs;

J.  Award prejudgment interest;

K.  Permanently enjoin defendant from engaging in any employment practices which discriminate on the basis of race or color;

L.  Require defendant to mail a letter to all employees notifying them of the verdict against them and stating that defendant will not tolerate discrimination in the future;

M.  Require that defendant post a notice in all of its workplaces of the verdict and a copy of the Court's order for injunctive relief;

    N.    Require that defendant train all management level employees on the protections afforded by 42 U.S.C. § 1981 and the MHRA; and,

    O.    Grant to plaintiff such other and further relief as may be just and proper.

                        Respectfully Submitted,

DATE: March 21, 2025                */s/ Lisa J. Butler*
                                        Lisa J. Butler, Esq.
                                        Employee Rights Group, PA, LLC
                                        23 Water Street, Suite 207
                                        Bangor, Maine 04401
                                        lisa@employeerightslaw.attorney
                                        Telephone: (207)874-0905

                                        Attorney for the Plaintiff